PENDLETON, President,
delivered the resolution of the court as follows.
This is a bill for a specific execution of a marriage agreement, in which we are permitted by reason and authority (notwithstanding the agreement was reduced to writing,) to hear parol proof, of what was the real intention of the parties ; the governing principle of the decree.
Col. Champe had acquired a large tract of land where he lived; and Poplar swamp running through it, he had fixed upon that, as a proper line of division, between his two sons William and John. By his will, in 17S9, he devised to William all his lands, in King George, below, and to John all above Poplar swamp; clearly giving, to the latter, the farm plantation in dispute.
It is obvious that he did not mean to change this land provision lor John, when he was about to marry in 1762; by taking, from him this small farm of 286 acres, convenient to John, but separated from William’s land, by John’s whole tract. There was another difficulty occurred. If I do not mistake the position of the land, purchased of Bronaugh which (according to the depositions of Chadwell and Bruce and the deed of Bronaugh) adjoined, it lay below Poplar swamp; and under the will would have passed to William: To secure this to John, was the true reason, why Bronaugh’s name was mentioned at all; and although Champe, in his instructions, or the draftsman, *in pursuing them, might embarrass the literal sense, the intention was, that John should have all the land above Poplar swamp, comprehending the farm; and should also have the tract below, purchased of Bron-augh: Which makes Eobinson’s deposition perfectly intelligible. It was thus, Champe explained it to Carter, who so understood it, and was satisfied. The same opinion was entertained by Mrs. Champe; who having a right, for life, to John’s land, and not to William’s, possessed the farm until her death, in 1767. How did William understand it? He suffered his mother to hold it as John’s; he afterwards permitted John himself to possess it till his death, in 1774; and then let his devisees hold it till 1783; when he brought suit. But a more direct proof, of his opinion, appears from his deed to his brother, in 1774, for 93% acres of land; which the father had purchased of John Grant, after the marriage agreement; and which descended to William as heir: In the bounds, of which, he calls the farm John’s land. Can it be imagined, that if he had considered the farm (a small tract of 286 acres detached from his other land) as belonging to him, that he would not have preserved these adjoining 93 acres to increase it?
It is urged however that he might be ignorant of his title. But is it reasonable to suppose, that he did not understand his rights as well in 1763 as in 1783? He was probably the eldest son, at his brother’s wedding; where he heard the conversation between the two fathers, and it is most likely he had heard his father, at other times, speaking on the same subject.
Upon the whole, the decree is a very just one; and is to be affirmed.